**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Chris M. Walls,

Plaintiff,

v.

Floe International, Inc.,

Defendant.

Civil No. 00-1371 (DWF/RLE)

**MEMORANDUM OPINION AND ORDER**

---

Mitchell J. Brunfelt, Esq., Colosimo, Patchin, Aronson & Kearney, 301 Chestnut Street, Virginia, Minnesota 55792, appeared on behalf of Plaintiff.

David Rochlin, Esq., Rochlin Law Office, 5200 Willson Road, Suite 150, Edina, Minnesota 55424, appeared on behalf of Defendant.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on August 31, 2001, pursuant to Defendant Floe International Inc.'s ("Floe") Motion for Summary Judgment. In his Complaint, Plaintiff Chris M. Walls alleges discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, and the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363.01, *et seq.* For the reasons set forth below, Defendant's motion is granted.

## Background

At a very young age, Plaintiff Chris Walls was diagnosed with Dandy-Walker Syndrome, a congenital deformity of the cerebellum which typically manifests in speech/language and motor developmental difficulties. Indeed, when Mr. Walls was a child, he experienced such difficulties and received special education services throughout his schooling. Either in addition to or as a

FILED SEP 1 8 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD SEP 1 8 2001
DEPUTY CLERK

result of this syndrome, Plaintiff contends that he experienced "tunnel vision." Plaintiff also points to medical reports generated during Mr. Walls' adolescence that describe a propensity toward dissocial acts, "an inability to judge or reason right or wrong," and delusional and illogical thoughts. Plaintiff maintains that, throughout his youth and to the present day, it is widely known in the community and easily discernible upon meeting Mr. Walls that he is developmentally disabled, as indicated primarily by an awkward gait and an involuntary head movement, purportedly in adjustment of his vision.

Mr. Walls, a lifetime resident of Hoyt Lakes, Minnesota, graduated from high school in 1991 and subsequently took classes for a short time at a post-secondary school in Bemidji, Minnesota. Upon returning to Hoyt Lakes, Mr. Walls began working and living on his own in an apartment. Mr. Walls worked consistently at a series of jobs before beginning his employment with Defendant Floe at its Hoyt Lakes plant on July 22, 1998. On his employment application and in his interview, Mr. Walls did not indicate that he had any physical or mental limitations, nor did he indicate any medical conditions, despite explicit questions to that effect on the written form.

Defendant Floe is in the business of manufacturing snowmobile trailers and docks and boat lifts. Given the nature of the two product lines, Floe divides its assembly line production into two seasons. Generally, the Hoyt Lakes plant assembles snowmobile trailers from July through December, and it assembles docks and boat lifts from January through June. While there are some similarities in the manner of assembling the two lines, the plant requires reconfiguration of all the equipment and its layout as the company shifts from one season to the next. In addition, the quantity of production is dictated by the number of orders that are placed each year. Consequently, there is no set date as to when each season will begin and end.

Moreover, because of the differences between the two lines and the time needed for reconfiguration, it is general practice for Floe to "lay-off" some of its employees at the end of each season with the possibility that they will be rehired for the next like product season or even when the plant reopens for production of the other product line. Defendants maintain that the criteria for rehiring employees is based on various factors, but primarily seniority and skill level.

When Mr. Walls was hired on July 22, 1998, by Supervisor Rod Opachek, Floe was in the process of assembling snowmobile trailers. Mr. Walls worked as an assembler on the line, one of the least skilled positions at the time. By all accounts, Mr. Walls was a good employee. Indeed, Mr. Walls received a good review on October 26, 1998, from Mr. Opachek, resulting in a raise from $5.50 to $6.00 per hour. The only incident that has been brought to the Court's attention involved an accident where another employee was hit in the head, without serious injury, by a piece of equipment maneuvered by Mr. Walls. In addition, Jody Burich, a Floe employee who knows Mr. Walls from their youth, wrote a letter dated, August 10, 1998, in which she states that at the time of his hiring, "[w]e are aware that Chris has tunnel vision" and that she spoke to Mr. Walls about his "tunnel vision" to make him aware that he could be placed in another position if his condition proved to be a problem. In her deposition testimony, however, Ms. Burich contends that she simply placed that letter in her personal file without discussing the matter with any other Floe employee or management. Mr. Walls maintains that the idea that he has tunnel vision is merely an unfounded carryover from his youth.

On December 23, 1998, at the close of the trailer season, Mr. Walls was laid off due to "lack of work." By that time, a new supervisor, Ray Preble, had replaced Mr. Opachek and was the signing authority on Mr. Wall's "Personnel Change Report" releasing him from work. Sometime in 1999, during the dock and boat lift season, Mr. Walls began making frequent visits

to the plant and inquiring of Mr. Preble as to when he would be rehired. According to Plaintiff, Mr. Walls wanted to work on the boat lift line, but eventually came to the conclusion that Mr. Preble was not going to rehire him. Defendant contends, however, that Mr. Walls never indicated an interest in working on the boat lift line and that Mr. Walls was told by Mr. Preble that he did not know when Mr. Walls would be rehired. On one of these occasions toward the end of the boat lift season, Mr. Walls developed the impression that he was not going to be rehired because of his disability. Mr. Walls based this impression on Mr. Preble's statement that he was not sure if Mr. Walls would be rehired. To the contrary, Defendant maintains that Mr. Preble told Mr. Walls that he would discuss the possibility of being rehired once the equipment for the snowmobile trailer line had arrived.

On June 29, 1999, subsequent to this last visit, Mr. Walls sent the following letter by facsimile to Wayne Floe, owner of the company:

> Dear Wayne,
>
> This is Chris Walls. I was laid off from the Hoyt Lakes plant in December, and since then Ray has hired eight others. Now, I do have an attorney in my family and I do know that if I am not hired back there for their trailor season, I can sue for back wages which would be around 3,600 dollars. Back in December and ever since then, Ray has said he wanted me back for trailors, as well as fellow employees. My family attorney is very busy for the next month or so, and since I do not want any bad feelings between me and Ray, or me and you, I thought I would send this letter to you and avoid a lawsuit. The reason for this letter is because Ray said that he is not sure if I am getting called back due to the number of employees he currently has. Now because this letter is going to save you and Ray money, I would like a two or three dollar raise if I do get called back, especially since I was off for six months. And in the longrun, this raise would be a hell of a lot cheaper than those back wages.
>
> Sincerely,
> Chris Walls

Shortly after sending the letter, Mr. Walls again visited Mr. Preble at the plant. During their discussion about the letter, Mr. Walls contends that he stated that he knew he had been laid off and not rehired because of his disability. By letter dated July 14, 1999, Mr. Walls' employment was terminated. Defendant maintains that while the letter was signed by Ray Preble, the decision to terminate was jointly made by Preble and Arland Herman, CFO for Floe, based on their interpretation that Mr. Walls' letter was both "inappropriate" and "threatening."

The matter before the Court is based on Mr. Walls' complaint that Floe violated both the ADA and the MHRA by failing to rehire and ultimately terminating him because of his disability. By its current motion, Floe seeks to dismiss all claims with prejudice.

**Discussion**

**1. Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Fed. R. Civ. P. 1. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a

genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

**2. Issues**

**a. In General**

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the U.S. Supreme Court set forth a three-stage burden-shifting test that has been consistently applied in discrimination cases. *See Ryther v. KARE 11*, 108 F.3d 832, 836 (8th Cir. 1997) (adopting *McDonnell Douglas* test as applied in *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 520 (1993).). The first stage requires that the plaintiff establish a *prima facie* case of discrimination. *Ryther*, 108 F.3d at 836. If the plaintiff is successful, then the burden shifts to the defendant who is required to provide evidence of a valid, non-discriminatory reason for the alleged discriminatory conduct. *Id.* Should the defendant produce such evidence, then the burden shifts back to the plaintiff requiring him/her to prove intentional discrimination. *Id.* The plaintiff is not required to present new evidence at this stage. Instead, it is sufficient for the plaintiff to rely on the evidence presented to establish the *prima facie* case coupled with the claim that the defendant's reason is mere pretext. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 146-49, 120 S. Ct. 2097, 2108-09 (2000).

A *prima facie* case of disability discrimination requires proof that: (1) the plaintiff suffers from a disability that substantially limits a major life activity; (2) he is qualified to perform the essential functions of the job, with or without accommodation; and (3) he has suffered an adverse employment action because of his disability. *Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108, 1111-12 (8th Cir. 1995). The Eighth Circuit has held that the analysis of

disability claims is the same under both the ADA and the MHRA. *See Miners v. Cargill Communications, Inc.*, 113 F.3d 820 (8th Cir. 1997), *cert. denied*, 118 S. Ct. 441 (1997).

For purposes of Defendant's motion, the parties do not dispute the first two elements of the *prima facie* case. The parties have focused their dispute on the third requirement of the *prima facie* case, *i.e.*, adverse employment action. Plaintiff has alleged both discrimination and retaliation. With respect to his allegation of discrimination, Plaintiff maintains that, because of his disability, Defendant never had any intention of rehiring him whether to the boat lift or snowmobile trailer product lines. With respect to his claim of retaliation, Plaintiff contends that he was terminated because of his June 29, 1999, letter which he characterizes, in conjunction with his subsequent conversation with Ray Preble, as an assertion of his statutorily protected rights. Defendant contends, however, that because Mr. Walls was neither a senior nor skilled employee that he was not likely to be called back to work for the boat lift line, but that until his letter, it was intended that he be rehired once the snowmobile trailer line was re-established. Moreover, Defendant maintains that its decision to terminate Mr. Walls' employment was based simply on the June 29, 1999, letter which it deemed to be threatening and inappropriate.

**b. Disability Discrimination**

Plaintiff's claim of discrimination is based on his contention that Defendant never had any intention of rehiring him after he was laid off from the 1998 snowmobile trailer season. As proof of this argument, Plaintiff points to a collection of "Personnel Change Reports" generated upon certain junctures in an employee's term, including, but not limited to, a promotion, transfer, layoff, and rehiring. Plaintiff maintains that the report recording his lay-off on December 23, 1998, is the only "lay-off" report among those relating to his contemporary employees that does not contain a notation to rehire. Indeed, in reviewing the reports submitted to the Court,

Mr. Walls' report is the only "lay-off" report submitted that does not contain such a notation. However, two of the employees laid off within the same time period as Mr. Walls, one on December 15, 1998, and one on February 5, 1999, who did receive notations that they should be rehired were *also* not rehired. In addition, the reports for the six employees who received the notations and actually were rehired do not contain any information to explain for which positions they were rehired, other than two employees who were rehired for part-time cleaning. The Court cannot draw a conclusion of whether the positions to which these employees were rehired were positions that could have been filled by Mr. Walls. Moreover, there is no indication to the Court that the collection of reports submitted actually accounts for all of the employees working for Floe at the same time as Mr. Walls. Consequently, no conclusions can fairly and accurately be drawn from the documents submitted. In sum, Plaintiff has failed to establish that other employees who were similarly situated as he, *i.e.*, with the same level of skill and seniority, but for his disability, were rehired.

**c. Retaliation**

With respect to Plaintiff's claim of retaliation, he must show that: (1) he engaged in a statutorily-protected activity; (2) he subsequently suffered an adverse employment action; and (3) a causal connection between (1) and (2) exists. *Manning v. Metropolitan Life Ins. Co., Inc.*, 127 F.3d 686, 692 (8th Cir. 1997). Plaintiff has been unable to do so. While Plaintiff describes the June 29, 1999, letter as an assertion of his rights and even as an "offer of settlement," Defendant characterizes the letter as inappropriate and threatening. The Court finds that the letter, on its face, is reasonably read as a threat. Even incorporating Mr. Walls' alleged statement to Mr. Preble after the letter was sent, stating that he felt he was being discriminated against because of his disability, does not eliminate the threatening nature of the letter. While it is true

that many letters asserting an employee's rights could be read to indicate potential litigation, the Court is not convinced that Defendant's response under the circumstances was unreasonable or pretextual. There is no evidence before the Court that Defendant's decision to terminate Mr. Walls was based on anything other than its determination that the letter was threatening and inappropriate.

While the Court is deeply sensitive to the insidious and pervasive nature of disability discrimination in our socicty and its workplaccs, particularly against individuals who arc regarded as disabled, it remains necessary that certain facts be established to maintain viable causes of action. Those facts have not been established here, and accordingly, the claims must be dismissed.

For the reasons stated, **IT IS HEREBY ORDERED** THAT:

1. Defendant's Motion for Summary Judgment (Doc. No. 10) is **GRANTED**; and
2. The Complaint (Doc. No. 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 18, 2001

DONOVAN W. FRANK
Judge of United States District Court

SEP 18 2001

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

**Please forward this announcement to the recipient of this fax.**

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

---

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500